**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH MAHER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No: |
| | ) | |
| | ) | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Now comes the Plaintiff, JOSEPH MAHER, by his attorneys, MARK D. DEBOFSKY, WILLIAM T. REYNOLDS and DEBOFSKY & ASSOCIATES, P.C., and complaining against the Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, he states:

**Count 1**

***Jurisdiction and Venue***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of a group-long term disability ("LTD") insurance policy ("the Policy"), underwritten and administered by Hartford Life and Accident Insurance Company ("Hartford"), for the benefit of employees of United Suppliers, Inc., which includes Plaintiff. Additionally, this action may be brought before this court

pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.      The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3.      Venue is proper in the Northern District of Illinois since Defendant does business in this District.  29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

### *Nature of the Action*

4.      This is a claim seeking recovery of disability benefits claimed to be due under an employee welfare benefit plan, which provided insured long-term disability benefits under policy number GLT-675080 ("the Policy"). This action is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g).

### *The Parties*

5.      Plaintiff, Joseph Maher ("Maher" or "Plaintiff") age 54 (born in 1962) is and was at the time of benefit denial a resident of Ramsey, Fayette County, Illinois.

6.      Defendant, Hartford, was at all times relevant hereto doing business throughout the United States and within the Northern District of Illinois, and delivered coverage to Plaintiff in the State of Illinois.

### *Statement of Facts*

7.      Prior to his disability, Plaintiff was successfully employed on a full-time basis as a Territory Manager in the Fertilizer Sales Department of United Suppliers, Inc., an agricultural crop protection, seed, and crop nutrient distributor operating throughout the United States and Canada.

8.      On October 23, 2005, Plaintiff became disabled due to a combination of severe

fatigue, severe, radiating low back, severe lower extremity pain, and foot drop resulting in part from damage to a nerve root likely suffered during a spinal surgery performed in 2000. He has not worked in any capacity since that date.

9. As a benefit of his employment with United Suppliers, Inc., Plaintiff received long-term disability coverage under a group disability insurance plan administered by Defendant. Following completion of the benefit waiting period, Plaintiff timely applied for and was approved to receive LTD benefits beginning January 21, 2006 in the amount of $5,264.26 per month.

10. Long-term disability benefits were approved under the following disability standard:

> **Disability** or **Disabled** means:
>
> 1. [D]uring the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
>
> 2. [F]or the 36 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
>
> 3. [A]fter that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

. . .

The Policy further defines the above relevant terms as follows:

> **Any Occupation** means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of 80% of your Indexed Pre· disability Earnings and the Maximum Monthly Benefit shown in the Schedule of Insurance.
>
> **Essential Duty** means a duty that:
>
> 1. is substantial, not incidental;
>
> 2. is fundamental or inherent to the occupation; and
>
> 3. can not be reasonably omitted or changed.

> **Indexed Pre-disability Earnings** when used in this policy means your Pre-disability Earnings adjusted annually by adding the lesser of:
>
> 1. 10%; or
>
> 2. the percentage change in the Consumer Price Index (CPI-W).
>
> The adjustment is made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.
>
> The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, we may use another nationally published index that fa comparable to the CPI-W.
>
> For the purposes of this benefit, the percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31st, and the prior years CPI-W as of July 31st, divided by the prior year's CPI-W.

11. On April 24, 2008, the Social Security Administration found Mr. Maher totally disabled, signifying an objective determination that he is incapable of engaging in "any substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). As a result of his award of SSDI benefits, Hartford recouped approximately $43,000 in overpaid benefits and was able to reduce its ongoing monthly obligation to Mr. Maher by $1,832 per month.

12. Shortly after his SSDI benefit award, internal claim notes show that Hartford determined Plaintiff was totally and permanently disabled with no expectation of recovery. On July 31, 2009, Hartford offered Mr. Maher approximately 60% of the total future value of his benefit claim as a buy-out. Mr. Maher rejected that proposal.

13. Despite adhering to all prescribed treatment, Plaintiff continued to suffer from significant chronic pain related to his spinal impairments over the next several years. His primary care physician, Dr. Boyd McCracken, continued to provide bi-annual updates to Hartford

indicating no improvement in symptoms. On March 20, 2014, an updated lumbar spine MRI again showed multilevel disc bulging, multilevel facet hypertrophy and ligamentous thickening, multilevel Schmorl's nodes and anterior osteophytes, and multilevel canal and foraminal stenosis.

14. Despite the lack of any evidence showing improvement in his overall medical condition, Hartford notified Plaintiff on August 4, 2015 that he no longer met the Policy's definition of disabled and, as a result, would no longer be entitled to ongoing LTD benefits beyond July 27, 2015. The decision both ignored the evidence of ongoing disability and further failed to provide an appropriate vocational analysis and instead relied solely upon 15 minutes of videotape compiled over the course of three days of hired surveillance showing light outdoor activity.

15. On February 1, 2016, Plaintiff, through counsel, submitted an appeal of Hartford's decision to terminate benefits. Included with the appeal were a functional capacity evaluation completed by neurosurgeon Dr. Claude Fortin, updated medical records from multiple treating physicians, the entire Social Security Administration claim file, daily pain logs completed by Mr. Maher for the months preceding and following his termination of benefits, United States Bureau of Labor Statistics Occupational Employment Statistics, and a proper calculation of Plaintiff's Indexed Predisability Earnings.

16. Despite the submission of this irrefutable information, Hartford upheld its decision to terminate Plaintiff's LTD benefits in a letter dated March 30, 2016. At no point during the claim appeal process did Hartford exercise its authority to have Mr. Maher examined by a neutral third-party physician.

17. Hartford's decision to terminate benefits remains based on flawed and unreliable medical and analyses that were obtained from biased and conflicted sources and inexplicably ignored the findings and opinions of Plaintiff's multiple treating physicians while further failing

to identify any evidence indicating even modest improvement in Plaintiff's condition.

18. Hartford's decision also ignored the vocational components of Plaintiff's claim. Its vocational analyses failed to identify any occupations existing in the national economy for which Mr. Maher is qualified that meet the Policy's income threshold.

19. Hartford also fails to gives due deference or reasonable and fair consideration to Plaintiff's Social Security finding of disability a required by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Because it is not required to take an earning threshold into account, the Social Security determination was made under a far more demanding standard than the Any Occupation standard at issue here.

20. As shown by the overwhelming medical evidence, Hartford's decision to terminate Plaintiff's LTD benefits was the product of biased claims handling and was the result of a conflict of interest rooted in unfounded and unsupported file reviews performed by non-consulting physicians routinely contracted by Hartford and by biased and incompetent vocational evaluators. Plaintiff thus remains entitled to LTD benefits due since July 27, 2015 plus any interest that has accrued thereon; and he is also entitled to a declaration of rights that his benefits remain payable thereafter so long as he continues to meet the Policy's terms and conditions.

21. All avenues of administrative appeal to Hartford have now been exhausted, and this matter is therefore ripe for adjudication.

## ***Relief Sought***

WHEREFORE, Plaintiff prays for the following relief:

A. That the court enter judgment in Plaintiff's favor and against the Defendant and that the court order the Defendant to pay all accrued long-term disability benefits to Plaintiff in an

amount equal to the contractual amount of benefits to which he is entitled from July 27, 2015 to the present;

      B.      That the Court order the Defendant to pay Plaintiff compounding prejudgment interest on all contractual benefits that have accrued prior to the date of judgment in accordance with 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3);

      C.      That the Court order Defendant to continue paying Plaintiff LTD benefits in an amount equal to the contractual amount of benefits to which he is entitled through the Policy's Maximum Benefit Period, so long as he continues to meet the policy conditions for continuance of benefits;

      D.      That the Court award Plaintiff his attorney's fees pursuant to 29 U.S.C. § 1132(g); and

      E.      That Plaintiff be awarded any and all other contractual and/or equitable relief to which he may be entitled, as well as the costs of suit.

June 9, 2016                                                                             Respectfully Submitted,

                                                                                 *Mark D. DeBofsky*
                                                                               One of the Plaintiff's Attorneys

Mark D. DeBofsky
William T. Reynolds
DeBofsky & Associates, P.C.
200 West Madison St, Suite 2670
Chicago, IL 60606
(312) 235-4880 (phone)
(312) 929-0309 (fax)